### ADARAND CONSTRUCTORS, INC., Plaintiff,

v.

### Samuel K. SKINNER, et al., Defendants.

No. 90–C–1413.

United States District Court, D. Colorado.

April 21, 1992.

William Pendley, Denver, Colo., for plaintiff.

Stephen Taylor, Asst. U.S. Atty. and John Dunne, Asst. Atty. Gen., U.S. Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

CARRIGAN, District Judge.

Plaintiff Adarand Constructors, Inc. (Adarand), a Colorado corporation, commenced this action to challenge the constitutionality of the federal Disadvantaged Business Enterprise (DBE) program. Defendants are Samuel K. Skinner, Secretary of the Department of Transportation

1. Adarand is managed by Randy Pech, a white male. Its stockholders include Valery J. Pech (Randy Pech's wife), Steven M. Goeglein, Ruth Pech and Linda Cosden.

(DOT); Thomas D. Larson, Administrator of the Federal Highway Administration (FHA); Louis N. MacDonald, Administrator of Region VIII of the FHA; and Jerry Budwig, Division Engineer of the Central Federal Lands Highway Division (CFLHD). Presently pending is the plaintiff's motion for summary judgment seeking a permanent injunction against the DOT, the FHA and the CFLHD and a declaratory judgment ruling the federal DBE program unconstitutional both on its face and as applied. Also pending is the defendants' cross motion for summary judgment seeking a ruling that the DBE program and its implementation are constitutional.

The parties have fully briefed the issues and oral argument would not materially facilitate the decision process. An *amicus curiae* brief has been filed by The Rocky Mountain Enterprise Legal Defense Fund. Jurisdiction exists under 28 U.S.C. § 1331 and § 1343.

### I. Facts and Procedure.

On September 11, 1989, Adarand[1], a non-DBE guardrail subcontracting business submitted the lowest subcontract bid for a portion of guardrail work on the West Delores County, Colorado highway project. Plaintiff's bid was rejected and a DBE who had submitted a higher bid was awarded the subcontract.

This action was brought under 42 U.S.C. §§ 1983 and 2000d to challenge the constitutional validity of the DBE program promulgated under federal highway funding provisions of the Surface Transportation Assistance Act of 1982, Pub.L. No. 97–424 § 105(f), 96 Stat. 2097 (STAA) and the Surface Transportation and Uniform Relocation Assistance Act of 1987, Pub.L. No. 100–17 § 106(c), 101 Stat. 132 (STURAA). *See also* 49 C.F.R. §§ 23 *et seq.* Specifically, the plaintiff challenges the DBE program[2] as administered by the CFLHD within Colorado.

2. The challenged DBE program is not exclusively a race-conscious program. The program includes women owned businesses as well as other "disadvantaged" businesses. Thus, the plain-

## II. Analysis.

STAA and STURAA create federal programs designed to benefit socially and economically disadvantaged business enterprises. Section 105(f) of STAA and § 106(c) of STURAA both provide in pertinent part: "[e]xcept to the extent that the Secretary determines otherwise, not less than 10 per centum of the amounts authorized to be appropriated under this Act shall be expended with small business concerns owned and controlled by socially and economically disadvantaged individuals as defined by section 8(a) of the Small Business Act (15 U.S.C. § 637(a))." Pub.L. 97–424 § 105(f), Pub.L. 100–17 § 106(c).

The CFLHD, as a recipient of federal highway funds, participates in this program.[3] Discrimination based on race, color, national origin or sex in the award or performance of federal contracts under STAA and STURAA is prohibited, and participating agencies are directed to "take all necessary and reasonable steps ... to ensure that minority business enterprises have the maximum opportunity to compete for and perform contracts." 49 C.F.R. §§ 23.7 and 23.43. States or federal agencies may award less than ten percent of such contracts to DBE's upon application to and approval by the Secretary of Transportation. 49 C.F.R. §§ 23.64(e), 23.65 and Part 23 Subpart D, Appendix D (1989).

Federal regulations promulgated in response to STAA and STURAA define DBE's as small businesses which are at least fifty-one percent owned and managed by disadvantaged individuals.[4] 49 C.F.R. § 23.62. These businesses qualify for DBE designation as well as preferential consideration in the award of subcontracts on federal highway projects. *Id.* Such businesses must be certified annually as "disadvantaged" and they maintain that status unless and until decertified by the participating state or agency. 49 C.F.R.

§ 23.51. Businesses not entitled to be presumed eligible for DBE status may apply and, upon sufficient showing, become certified by the Small Business Administration or the state as qualified for that status. Small Business Act § 8(a), 15 U.S.C. § 637(a).

Plaintiff's motion for summary judgment seeks a declaratory judgment and permanent injunction against the DOT, the FHA and the CFLHD until specific findings of discrimination are made by the defendants as allegedly required by *City of Richmond v. Croson,* 488 U.S. 469, 109 S.Ct. 706, 102 L.Ed.2d 854 (1989). Defendants' motion for summary judgment seeks a ruling that the DBE program and its implementation are constitutional under *Fullilove v. Klutznick,* 448 U.S. 448, 100 S.Ct. 2758, 65 L.Ed.2d 902 (1980) and *Metro Broadcasting v. F.C.C.,* 497 U.S. 547, 110 S.Ct. 2997, 111 L.Ed.2d 445 (1990).

Summary judgment is proper if the pleadings, depositions and affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56. The party opposing a properly supported summary judgment motion may not rest upon the mere allegations of the complaint, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). Because no genuine issues of material fact are here disputed, this matter is ripe for decision on the pending cross motions for summary judgment.

In *Croson,* the Supreme Court held that, when instituting race-conscious measures, states and local government entities must make findings of prior discrimination. *Croson,* 488 U.S. at 490, 109 S.Ct. at 719.

---

tiff's contention that the DBE program awards contracts solely on the basis of race is incorrect.

**3.** The CFLHD includes all or parts of Arizona, California, Colorado, Hawaii, Kansas, Nebraska, Nevada, New Mexico, North Dakota, South Dakota, Texas, Utah and Wyoming.

**4.** The category of disadvantaged individuals under 49 C.F.R. § 23.62 is rebuttably presumed to include "women, Black Americans, Hispanic Americans, Native Americans, Asian–Pacific Americans, [and] Asian–Indian Americans."

Because no specific findings were made as to past discrimination, the City of Richmond's thirty percent minority set-aside program failed to satisfy strict scrutiny analysis and, therefore, was held unconstitutional.

Defendants distinguish *Croson* from the instant case noting that, unlike *Croson,* the defendants here are all federal actors. Defendants note that Justice O'Connor, in part of the *Croson* opinion in which she was joined by Chief Justice Rehnquist and Justice White, distinguished *Croson* from *Fullilove* by noting that "Congress may identify and redress the effects of society-wide discrimination [and] need not make specific findings of discrimination." *Id.* Defendants argue that *Fullilove* controls here.

In *Fullilove,* the Court, in upholding a federal funding program, stated that deference to the legislative authority of Congress under the Commerce Clause, the Spending Clause and the Civil War Amendments was appropriate. *Fullilove,* 448 U.S. at 475–478, 100 S.Ct. at 2773–2775 (citations omitted). The Court specifically stated that:

> "[a] program that employs racial or ethnic criteria, even in a remedial context, calls for close examination; yet we are bound to approach our task with appropriate deference to the Congress, a co-equal branch charged by the Constitution with the power to 'provide for the general Welfare of the United States' and 'to enforce, by appropriate legislation' the equal protection guarantees of the Fourteenth Amendment". *Id.* at 472, 100 S.Ct. at 2771 (citations omitted).

Similarly, in the more recent decision of *Metro Broadcasting,* the Supreme Court upheld the constitutionality of a federal agency minority preference program stating that:

> "benign race-conscious measures mandated by Congress—even when those measures are not 'remedial' ... are constitutionally permissible to the extent that they serve important government objectives within the power of Congress and are substantially related to the

achievement of those objectives." *Metro Broadcasting,* 110 S.Ct. at 3000.

The Court found of "overriding significance" the fact that the minority program was "specifically approved—indeed, mandated—by Congress." *Id.* at 3008–09. *See also Michigan Road Builders Ass'n, Inc. v. Blanchard,* 761 F.Supp. 1303, 1314 (W.D.Mich.1991) (upholding a state's application of the STAA and STURAA programs).

*Croson* is readily distinguishable from *Fullilove* and *Metro Broadcasting.* *Croson* did not address the issue of *congressional* action but decided what procedures state and local government entities must follow in evaluating minority public works programs. *Croson* specifically provided "[t]hat [because] Congress may identify and redress the effects of society wide discrimination does not mean that, *a fortiori,* the States and their political subdivisions are free to decide that such remedies are appropriate." *Croson,* 488 U.S. at 490, 109 S.Ct. at 719.

It is clear under these cases that race-conscious classifications established by Congress are subject to a standard of review different from that applicable to similar classifications prescribed by state and local governments. The Supreme Court has declared:

> "*Croson* cannot be read to undermine [the] decision in *Fullilove.* In fact much of the language and reasoning in *Croson* reaffirmed the lesson of *Fullilove* that race-conscious classifications adopted by Congress are subject to a different standard than such classifications prescribed by state and local governments." *Metro Broadcasting,* 110 S.Ct. at 3009.

The overriding distinction between the program upheld in *Fullilove* and the instant program, when compared to the program held unconstitutional in *Croson,* is undoubtedly the congressional mandate behind the *Fullilove* program and this one. Further, the ruling and effect of *Fullilove* are clearly acknowledged in *Croson.* *Croson,* 488 U.S. at 491, 109 S.Ct. at 719.

Thus *Fullilove, Croson* and *Metro Broadcasting* teach that "the federal

government can, by virtue of the enforcement clause of the Fourteenth Amendment, engage in affirmative action with a freer hand than states and municipalities." *Michigan Road Builders*, 761 F.Supp. at 1314 (*citing Milwaukee County Pavers Association v. Fiedler*, 922 F.2d 419, 423–24 (7th Cir.1991)). Nothing in the above cases demands that the federal government assess incidents of past discrimination in all areas of the country where federal programs apply.

Rather these and other cases recognize that Congress is specifically empowered to remedy the effects of disabling discrimination, remove such barriers and "enforce, by appropriate legislation," the equal protection guarantees of the Fourteenth Amendment. *Fullilove*, 448 U.S. at 456–472, 476, 100 S.Ct. at 2763–2772, 2773; *Croson*, 488 U.S. at 484–508, 109 S.Ct. at 716–729. *See also Wygant v. Jackson Board of Education*, 476 U.S. 267, 277, 106 S.Ct. 1842, 1848, 90 L.Ed.2d 260 (1986) (plurality opinion); *Michigan Road Builders*, 761 F.Supp. at 1313–14; *Ellis v. Skinner*, 753 F.Supp. 329 (D.Utah 1990).

The STAA, STURAA and DBE programs whose constitutionality is here attacked were authorized by Congress and mandated for all agencies and states which receive funds under them. Neither CFLHD nor its subparts in Colorado independently adopted the ten percent set-aside. Rather, it was required by the federal regulations under which CFLHD operates. Thus the mere fact that CFLHD implements a federal program within Colorado does not convert it into a state program requiring *Croson*-type analysis. Accordingly, *Croson* is not controlling here because the challenged regulations and actions involve only federal actors acting pursuant to congressional mandate. Rather *Fullilove* and *Metro Broadcasting* control.

In determining the constitutionality of the challenged DBE program, it must be demonstrated that the program serves important governmental objectives and that it

is substantially related to achievement of these objectives.[5] *See Fullilove*, 448 U.S. at 473–475, 480–492, 100 S.Ct. at 2772–2773, 2775–2782. Although Congress made no specific findings on the subject, the Court in *Fullilove* was satisfied, as I am here, that Congress had "abundant historical basis from which it could conclude" such findings sufficient to demonstrate important governmental objectives underlying the program. *Id.* at 478, 100 S.Ct. at 2774.

Because I am satisfied that the instant program serves appropriate governmental objectives, the question becomes whether it is narrowly tailored to achieve the objectives of STAA and STURAA without violating constitutional guarantees. The DBE program must be analyzed to assure that it does not mandate its provisions in an inflexible manner and that it successfully ensures minimum impact on non-DBEs. *See Id.* at 480, 100 S.Ct. at 2775; *Metro Broadcasting*, 110 S.Ct. at 3027–28.

To qualify for DBE status a business must demonstrate, via the annual certification process, that it is a bona fide DBE, eligible to participate in the program. 49 C.F.R. § 23.62 and Part 23, Subpart D, Appendix C. This annual certification mechanism is reasonably calculated to insure legitimate, qualified participants, so that the program does not become overinclusive in the sense of tolerating abuse of the program by non-DBE's. Likewise the program is not underinclusive since it provides that businesses not entitled to the presumption of DBE status may apply for certification and establish their qualifications to participate. *Id.* Finally, waiver of the mandatory ten percent minimum is provided through a state or agency's application to and approval by the Secretary of Transportation. 49 C.F.R. §§ 23.64(e), 23.65 and Part 23, Subpart D, Appendix D.

Plaintiff correctly points out that the CFLHD is required to comply fully with the Fifth and Fourteenth Amendments to

---

5. The Supreme Court in *Fullilove* noted that "[section] 5 [of the Fourteenth Amendment] is a positive grant of legislative power authorizing Congress to exercise its discretion in determining whether and what legislation is needed to secure the guarantees of the Fourteenth Amendment." *Fullilove*, 448 U.S. at 476, 100 S.Ct. at 2774.

the constitution. However, the plaintiff's assertion that CFLHD has failed to comply with applicable regulations is not supported by evidence.

It is significant that the instant legislation and resulting programs were modeled after the programs upheld in *Fullilove.* I conclude that the DOT, FHA and CFLHD's policies do not violate equal protection since they are supported by longstanding congressional policies related to achieving the important governmental objective of remedying discrimination. Additionally, the challenged programs are narrowly tailored to achieve their legitimate objectives. I therefore conclude that the administrative program under which the defendants have acted meets the requirements of the Fifth and Fourteenth Amendments.

Accordingly, it is ORDERED that:

(1) the defendants' motion for summary judgment is granted;

(2) the plaintiff's motion for summary judgment is denied; and

(3) the plaintiff's claims and action are dismissed with prejudice.